STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, PLAINTIFF-APPELLANT, v. UNSATISFIED CLAIM AND JUDGMENT FUND AND TRANSAMERICA INSURANCE, DE-FENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued October 25, 1983—Decided November 14, 1983.

Before Judges ANTELL, JOELSON and McELROY.

*Michael J. Cernigliaro* argued the cause for appellant (*Campbell, Foley, Lee, Murphy & Cernigliaro,* attorneys; *Michael D. Kirby* on the brief).

*Patrick J. Hughes* argued the cause for respondents (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney; *James J. Ciancia,* Assistant Attorney General, of counsel and *Georgine Natelli De Angelis,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

ANTELL, P.J.A.D.

Anthony George suffered serious personal injury in an automobile accident which resulted in medical expenses of $130,852.62. There were three insured automobiles in George's household, two of which were insured under a single policy issued by plaintiff and the third under a policy issued by Transamerica Insurance Company. Both policies provided for the payment of personal injury protection (PIP) benefits required by the New Jersey Automobile Reparation Reform Act, *N.J.S.A.* 39:6A–1 *et seq.,* and the two insurers agreed that plaintiff would pay two-thirds of the PIP benefits and Transamerica would be responsible for one-third. After adjustments, plaintiff's share came to $87,671.26 and Transamerica paid $43,181.36. The agreement was entered into pursuant to *N.J.S.A.* 39:6A–11 which directs contribution among insurers in such cases of "an equitable pro-rata share of the benefits paid."

This controversy arises under *N.J.S.A.* 39:6A–4 a which, in pertinent part, provides:

> In the event benefits paid by an insurer pursuant to this subsection are in excess of $75,000.00 on account of personal injury to any one person in any one accident, such excess shall be paid by the insurer in consultation with the Unsatisfied Claim and Judgment Fund Board and shall be reimbursable to the insurer from the Unsatisfied Claim and Judgment Fund pursuant to section 3 of this act.*

Acting under the foregoing statute plaintiff submitted a Standard Reimbursement and Reserve Form to the Unsatisfied Claim and Judgment Fund (hereinafter "Fund") seeking reimbursement for medical expense benefits paid by plaintiff in excess of the $75,000 statutory threshold. The Fund declined, saying that it would not reimburse unless 50% of total medical expense benefits paid exceeded $75,000. It reasoned that this result was dictated by the fact that only two separate insurance policies were involved, notwithstanding that plaintiff had been receiving premium payments for its policy based on coverage extended for two cars and Transamerica had received premium payments on its policy based on coverage for only one.

Plaintiff sued the Fund for a declaration of its entitlement to reimbursement, and this appeal is from an order for summary judgment in favor of the Fund. In entering judgment the Law Division found that plaintiff and Transamerica bore responsibility on a 50–50 basis for the payment of medical expense benefits to the insured. It further determined that since there were two separate policies the $75,000 threshold was applicable to each and that $150,000 in coverage must be exhausted before the Fund is required to reimburse. The judge's result seems to be grounded in the belief that the "pro-rata equitable distribution" language of *N.J.S.A.* 39:6A–11 should not be construed so as to produce a result inimical to the interests of a public fund.

Not given sufficient consideration by the trial judge was the legislative intent, in enacting *N.J.S.A.* 39:6A–4a and *N.J.S.A.* 39:6–73.1, to ease the financial impact of catastrophic claims

---

*\**N.J.S.A.* 39:6–73.1.

which were being paid by the insurance industry. The lawmakers' anxiety is explained in the following language found in the New Jersey Legislative Study Commission's Report to the Legislature of 1977:

> Some problems have emerged in New Jersey with regard to unlimited medical benefits. While reserving practices vary, in general insurers attempt to reserve a sum from which the investment income is sufficient to pay the yearly cost of the claim. How much actually needs to be reserved for any one claim is a subjective judgment, of course, and if there is significant over-reserving such loss reserves can have an adverse impact upon the rates.
>
> Smaller companies with limited resources have been severely taxed with regard to committing reserves for catastrophic claims. Most small companies reinsure excess losses, and have had to pay increasingly larger reinsurance premiums. The cost of this reinsurance, of course, also ultimately impacts upon the rates which companies must charge to their insureds for this coverage.
>
> Accordingly, the New Jersey Department of Insurance has proposed a solution to the problem of maintaining large loss reserves for catastrophic losses or purchasing costly reinsurance. Senate Bill No. 1380 has passed both houses of the legislature and is now on the Governor's desk awaiting his signature. This bill limits any one company's direct loss to $75,000; any excess losses would be paid from the state's Unsatisfied Claim and Judgment Fund. The excess losses from the fund would be pooled among insurers in proportion to their market share. Any amount paid into the pool by insurers, in turn, could be passed along to the policyholders. The proposal would thus free companies from the burden of maintaining loss reserves and would reduce the need for reinsurance. It is estimated that if this law had been in effect for accident year 1975, the over-all rate level for the PIP coverage could have been reduced by approximately 7 percent. [at 54–55].

It thereafter followed that *N.J.S.A.* 39:6A–4a was amended to provide for reimbursement by the Fund of amounts paid by "an insurer" in excess of $75,000 and *N.J.S.A.* 39:6–73.1 was enacted in the following form:

> In the event medical expense benefits paid by an insurer, in accordance with section 4a. of P.L.1972, c. 70 (C. 39:6A–4), are in excess of $75,000.00 on account of personal injury to any one person in any one accident, the Unsatisfied Claim and Judgment Fund shall assume such excess and reimburse the insurer therefor in accordance with rules and regulations promulgated by the Director of the Division of Motor Vehicles after consultation with the Commissioner of Insurance; provided, however, that this provision is not intended to broaden the coverage available to accidents involving uninsured or hit-and-run automobiles, to provide extraterritorial coverage, nor to pay excess medical expenses.

We disagree with the Fund's contention that the two-thirds, one-third contribution agreement entered into by plaintiff and

Transamerica resulted in plaintiff's "assumption of part of Transamerica's threshold." The arrangement was entered into pursuant to a statutory provision requiring that the insurers' contributions be made in "equitable pro-rata" shares. What is equitable will, of course, vary from case to case. Here, plaintiff was presumably collecting greater premiums for its policy and the responsibility for paying medical expenses was therefore allocated, quite reasonably we think, in the same proportion as the premiums collected by the two insurers bore to each other. That the coverages extended by plaintiff were contained in a single policy rather than two does not alter the substance of the insurers' respective responsibilities, and we are not persuaded either by that fact or the public character of the Fund that, as the Fund argues, it would have been more equitable for the two insurers to pay the medical benefits in equal shares.

It is noteworthy that if plaintiff and Transamerica had entered into an agreement to divide payment of the medical benefits on an equal basis, the total cost to plaintiff would have been only $65,426.31. Under the arrangement actually reached, even with the payment of reimbursement by the Fund, plaintiff's expense is almost $9,600 greater.

By its order for summary judgment the trial court also dismissed plaintiff's claim for reimbursement of $1,278.84 paid to International Rehabilitation Associates. Plaintiff claims in its brief before us that this firm coordinated and supervised the insured's treatment, counseled him and consulted with his doctors. Before the trial court in support of the motion was an affidavit stating that these services were in the nature of "claim management" pursuant to N.J.A.C. 13:18–10.5 and not for medical treatment. Nothing was presented by plaintiff in opposition and the issue was not even argued. It will not be given consideration on appeal. *Nieder v. Royal Indemnity Ins. Co.,* 62 N.J. 229, 234 (1973).

Except with respect to the matter dealt with in the final paragraph hereof, the order for summary judgment is reversed and judgment is hereby ordered entered in accordance herewith.