273 N.J. Super. 578 (1994)
642 A.2d 1055
DWAYNE T. LUSBY, A MINOR BY AND THROUGH HIS MOTHER AND GUARDIAN AD LITEM, SHIELA NICHOLS, SHIELA NICHOLS, INDIVIDUALLY, AND DWAYNE LUSBY, INDIVIDUALLY, PLAINTIFFS-RESPONDENTS,
v.
EDWARD F. HITCHNER AND GEORGE & LYNCH, INC., DEFENDANTS-APPELLANTS, AND THE DIVISION OF MEDICAL ASSISTANCE AND HEALTH SERVICES, INTERVENOR-APPELLANT, AND LIBERTY MUTUAL INSURANCE COMPANY AND/OR JOHN DOE INC. (FICTITIOUS NAME), JOINTLY, SEVERALLY AND/OR IN THE ALTERNATIVE, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued May 3, 1994.
Decided June 10, 1994.
*580 Before Judges PRESSLER, DREIER and KLEINER.
Burchard V. Martin argued the cause for appellants Edward F. Hitchner and George & Lynch, Inc. (Martin, Gunn & Martin, attorneys; Burchard V. Martin and William J. Martin, on the brief).
Eileen C. Stokley, Deputy Attorney General, argued the cause for intervenor-appellant Division of Medical Assistance and Health Services (Deborah T. Poritz, Attorney General, attorney; Joseph L. Yannotti, Assistant Attorney General, of counsel; Ms. Stokley, on the brief).
Mark S. Gertel argued the cause for respondents Dwayne T. Lusby and Shiela Nichols (Ballen, Gertel & Dicintio, attorneys; Susan P. Drogalis and Mark G. Esposito, on the brief).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
These consolidated appeals, both taken on leave granted, raise important questions of statutory construction of apparently conflicting *581 provisions of the New Jersey Automobile Reparation Reform Act, N.J.S.A. 39:6A-1 to -35, Medicaid,[1] the compulsory insurance requirements of N.J.S.A. 17:28-1.4, and statutory collateral source rules, all in the context of the limitations period for assertion of personal injury protection claims (PIP) and the rules permitting amendment of pleadings. Ultimately, the resolution of the issues before us will determine who, as between the insurance industry and the governmentally-funded Medicaid program, will pay the enormous and continuing medical bills resulting from the catastrophic injuries sustained by the infant plaintiff, Dwayne T. Lusby, in a motor vehicle accident. We have concluded that under the applicable federal and state schemes, the financial burden must fall on the insurance industry.
On May 16, 1988, Dwayne T. Lusby, then seven, was riding his bicycle near his home in Salem, New Jersey. He was struck by a truck operated by defendant Edward F. Hitchner and owned by his employer, George & Lynch, Inc., both residents of Delaware. The boy suffered grave injuries and has been in a coma, apparently irreversible, since the accident. The cost of his care to date, paid for in full by Medicaid, exceeds $600,000. It is estimated that another one million dollars will be expended during his remaining lifetime.
The boy's family had no automobile insurance which could be looked to for the payment of PIP benefits. Defendants' vehicle was insured by Liberty Mutual Insurance Company (Liberty). Accordingly, plaintiffs' attorney wrote to a Liberty office in Delaware on July 12, 1988, and to a Liberty office in New Jersey on July 28, 1988, formally demanding PIP coverage under defendants' policy. A Liberty claims supervisor at the New Jersey office responded on August 10, 1988, advising counsel that since the insured vehicle was garaged and registered in Delaware, *582 Delaware's no-fault law rather than New Jersey's applied. She also advised counsel that she had been instructed by the Delaware office that under Delaware no-fault law, pedestrian benefits were available only if the accident occurred in that state. The letter concluded with the advice that since "there is no New Jersey No-Fault coverage for this vehicle, we are formally advising you of our denial for No-Fault benefits." As it turned out, this advice was incorrect, but in any event, Medicaid thereafter assumed the payment of the child's medical expenses.
This negligence action against the owner and operator of the truck was commenced on May 14, 1990, by the boy's mother, plaintiff Shiela Nichols, both as guardian ad litem and individually, and by his father, Dwayne Lusby, individually. The complaint was in three counts. The first count, on behalf of the child, sought non-economic damages for his pain, suffering and permanent disability. The second count, on behalf of the mother, sought compensation for the boy's medical expenses and loss of companionship. The third count, on behalf of both parents, sought emotional distress damages.
The first of the motions whose disposition is now before us was made by defendants in early September 1993. Relying on the collateral source statute, N.J.S.A. 2A:15-97, they sought an order barring recovery by plaintiffs of the child's medical expenses. Plaintiffs responded by filing a cross-motion seeking leave to amend their complaint to assert a PIP claim against Liberty, defendants' liability carrier, which they sought to add as a direct defendant. At that point, the Attorney General, on behalf of the Division of Medical Assistance and Health Services (DMAHS), which administers the Medicaid program, moved to intervene to support plaintiffs' motion and to resist defendants'. Following oral argument on the three motions, the trial court permitted DMAHS to intervene, granted plaintiffs' motion for leave to amend the complaint, and granted defendants' motion to bar recovery of medical expenses under N.J.S.A. 2A:15-97. We granted both defendants' ensuing motion for leave to appeal the *583 order allowing the amendment and plaintiffs' and DMAHS's motion for leave to appeal the order barring recovery of medical expenses under the collateral source statute. We affirm the order allowing the amendment and conclude that that affirmance moots the appeal of the order barring recovery under the collateral source rule.
We consider the order permitting the amendment of the complaint in the light of the complex of applicable statutes. Defendants' resistance to the amendment was based on the two-year limitations period prescribed by N.J.S.A. 39:6A-13.1 for the commencement of an action against the PIP carrier. See Ochs v. Federal Ins. Co., 90 N.J. 108, 447 A.2d 163 (1982). As we have noted, the original complaint here was filed within two years following the date of the accident. Thus, the amendment, if permitted to relate back to the date of the filing of the complaint, would be timely. We agree with the trial judge that relation back pursuant to R. 4:9-3 was appropriate here.
We point out at the outset that while Liberty had initially declined PIP coverage in reliance on Delaware law, its objection to the amendment of the complaint was based only on limitations grounds and not on the claim that its Delaware policy did not afford plaintiffs PIP coverage. As now appears, this is so because the original non-coverage position which Liberty took in August 1988 was, as a matter of law, incorrect by reason of the so-called deemer statute, N.J.S.A. 17:28-1.4, enacted by L. 1985, c. 520, § 18, and amended for purposes of consistency with the verbal threshold option by L. 1988, c. 119, § 1. In essence, that statute provides that every automobile policy issued to an out-of-state insured by an insurer authorized to transact business in this state shall include the PIP coverage required by the law of this state "whenever the automobile or motor vehicle insured under ... [that] policy is used or operated in this State." Moreover, the statute provides that every automobile policy subject to its terms shall be "construed as providing the coverage required herein," that is, the statute eponymously "deems" that the policy includes *584 the required coverage. Finally, we assume that Liberty was promptly aware of the enactment of the deemer statute since the statute also includes the provision that within thirty days of its effective date, every insurer authorized to do business in New Jersey shall "file and maintain with the Department of Insurance written certification of compliance with the provisions of this section." We presume Liberty complied with this mandate.
Plaintiffs' counsel, on the motion to amend, conceded that he was unaware of the deemer statute until advised of its existence by DMAHS shortly before the motion was made. DMAHS was also apparently unaware of it until some time after August 1992 when the first reported opinions were published that construed the statute, sustained its constitutionality, and applied it in statutorily-mandated circumstances. See D'Orio v. West Jersey Health Systems, 797 F. Supp. 371 (D.N.J. 1992); Watkins v. Davis, 259 N.J. Super. 482, 614 A.2d 189 (Law Div. 1992), aff'd o.b., 268 N.J. Super. 211, 633 A.2d 112 (App.Div. 1993). See also Adams v. Keystone Ins. Co., 264 N.J. Super. 367, 624 A.2d 1008 (App.Div. 1993).[2] Obviously the statute applies here. Thus, had Liberty honored plaintiffs' prompt PIP claim as it was bound to do, the automobile-insurance industry and not Medicaid would have borne the burden of the injured child's medical expenses from the outset.[3] The purpose of this motion to amend the complaint was *585 to achieve that result now by way of affording Medicaid its reimbursement right against the PIP benefits to which plaintiffs are entitled by law.
We note first, as a matter of New Jersey law, that as between Medicaid and no-fault insurance, it is plain that no-fault is primary. As the Supreme Court made clear in Aetna Ins. Co. v. Gilchrist Bros., Inc., 85 N.J. 550, 428 A.2d 1254 (1981), the legislative intent in enacting no-fault was to make PIP benefits the immediate and primary source of medical expense payment except as otherwise provided by N.J.S.A. 39:6A-6, which requires deduction from the PIP obligation of benefits collectible "under workers' compensation insurance, employees' temporary disability benefit statutes, medicare provided under Federal law, and benefits, in fact collected, that are provided under Federal law to active and retired military personnel...." The Aetna Court held that under N.J.S.A. 39:6A-6, workers' compensation benefits are ultimately primary to no-fault benefits. See also Olivero by Olivero v. New Jersey Mfrs. Ins. Co., 199 N.J. Super. 191, 488 A.2d 1071 (App.Div. 1985). And see O'Boyle v. Prudential Ins. Co. of America, 241 N.J. Super. 503, 575 A.2d 515 (App.Div. 1990), so holding with respect to temporary disability benefits mandated by law.[4]
There appears, however, to be no reported decision in this State considering the provision of N.J.S.A. 39:6A-6 by which Medicare is apparently rendered primary to no-fault. Liberty asserts that since that is the statutory scheme for the relationship between Medicare and no-fault benefits, we should extend that scheme to Medicaid as well, holding that PIP is also secondary to Medicaid. *586 We reject that argument. As we view N.J.S.A. 39:6A-6 in the light of Aetna, supra, that statute represents a legislative determination of which system of third-party compensation must bear the ultimate burden of the economic losses sustained by automobile accident victims. It was certainly within the New Jersey Legislature's prerogative to determine that work-connected accidents should be ultimately compensated for by the workers' compensation system and not by the no-fault law. We further note that at the time N.J.S.A. 39:6A-6 was adopted, Medicare, as a matter of federal law, was primary for those entitled to its benefits. The Medicare legislation was, however, amended in 1982 by the enactment of the Medicare Secondary Payer Statute, 42 U.S.C.A. § 1395y, for the purpose of reducing federal spending and to protect the financial viability of the Medicare program. See generally Blue Cross and Blue Shield Ass'n v. Sullivan, 794 F. Supp. 1166, 1168 (D.D.C. 1992). Under 42 U.S.C.A. § 1395y(b)(2)(A)(ii), Medicare benefits are specifically rendered secondary to benefits available under automobile insurance including no-fault insurance. Clearly, then, under the Supremacy Clause of Article VI of the United States Constitution, that provision of the Medicare Act supersedes the contrary provision of N.J.S.A. 39:6A-6. Thus at least one federal court has held that contrary provisions of state no-fault law are preempted by the federal Medicare Secondary Payer Statute. Varacalli v. State Farm Mut. Auto. Ins. Co., 763 F. Supp. 205 (E.D.Mich. 1990). See also Abrams v. Heckler, 582 F. Supp. 1155 (S.D.N.Y. 1984). Beyond that, however, Medicaid, unlike Medicare, was never viewed as primary but rather as a cooperative state-federal program providing benefits of last resort. See 42 U.S.C.A. § 1396a(a)(25); N.J.S.A. 30:4D-7.1. We assume that it is for that reason that Medicaid benefits were never expressly included in N.J.S.A. 39:6A-6 and were never intended to be.
The question then that determines whether no-fault insurance will bear its intended primary burden here is whether the trial judge properly allowed the amendment of the complaint to assert a PIP claim after the expiration of the two-year limitations period *587 prescribed by N.J.S.A. 39:6A-13.1. In challenging the order, Liberty relies on Ochs v. Federal Ins. Co., supra. The issue in Ochs arose out of a policy provision which excluded motorcyclists from PIP coverage. An inquiry was made on behalf of the plaintiff, a motorcyclist injured in 1974, of the insurer's agent respecting the availability of PIP coverage. The advice given, based on the express terms of the policy, was that the motorcyclist exclusion precluded coverage. Fifteen months after the accident, a trial court held the exclusion to be void as against public policy. Harlan v. Fidelity & Cas. Co., 139 N.J. Super. 226, 353 A.2d 151 (Law Div. 1976). Eleven months after Harlan was decided, this court concurred with its holding in Hoglin v. Nationwide Mut. Ins. Co., 144 N.J. Super. 475, 366 A.2d 345 (App.Div. 1976). In 1978, more than two years after Harlan, plaintiff finally made his first formal demand for PIP benefits and filed his action to recover them when the demand was rejected. The Supreme Court concluded that the invalidation of the exclusion by judicial decision after the cause of action had accrued did not justify a tolling of the limitations period for these reasons: the advice given by the insurer respecting the exclusion was correct when given, plaintiffs had the same opportunity as the Harlan and Hoglin plaintiffs to attack the exclusion, nine months remained of the two-year limitations period after Harlan, and the action was not brought until more than two years after Harlan.
Most of the operative facts underlying Ochs are critically different here. First, a formal demand for PIP payments was timely made. Second, the insurer's rejection was contrary to the law as it then stood since the deemer statute, which must have been known to Liberty, clearly applied. Third, plaintiff acted promptly after the publication of the first reported decision dealing directly with the deemer statute. Finally, and perhaps most significantly, there was already a suit pending which could properly serve as a vehicle for relation back of the late claim. We thus agree with the trial judge that in these circumstances, the applicable judicial precedent was not Ochs, but rather, this court's decision in *588 Smelkinson v. Ethel and Mac Corp., 178 N.J. Super. 465, 429 A.2d 422 (App.Div. 1981).
In Smelkinson, plaintiff had been struck by a vehicle while sunbathing at a recreational facility. Her attorney, apparently unaware that the no-fault law applied in these peculiar circumstances of her "pedestrian" injury, commenced a timely personal injury action against the owner and operator of the vehicle whose liability carrier, Gateway Insurance Company, was also obliged to provide plaintiff with PIP payments. In that action plaintiff sought both economic damages covered by PIP and non-economic damages. It was not until after the time limitation of N.J.S.A. 39:6A-13.1 had run that plaintiff's attorney realized that the economic damages were subject to the no-fault law. He moved to amend the complaint to assert the PIP claim. In reversing the trial judge's denial of the motion, we relied on that provision of R. 4:9-3, which permits relation back of a claim asserted during the pendency of the action against one who was not originally a party thereto. Analyzing the text, purpose and policy of that provision, we concluded that it encompassed the late assertion in the negligence action against the tortfeasors of a direct PIP claim against the tortfeasors' liability insurer. We pointed out that in the circumstances all three pre-conditions for relation back against a previously unnamed party had been met. First, there was not only a transactional relationship between the original claim and the claim asserted against the new party by the amended pleading, but a fortiori, the precise claim for economic damages asserted in the amended pleading had already been asserted in the original complaint. Second, the new party, Gateway, certainly had notice of the claim since it was already defending against it. For that reason we found no prejudice to it in maintaining its defense since obviously its responsibility to pay belated PIP benefits was identical to the responsibility it had to pay them on the date of the accident. Third, the new party, Gateway, knew or should have known that but for plaintiff's error in identifying the proper party, the claim for economic damages would have been made directly against it in the first instance. As we said in Smelkinson:

*589 Finally, it is beyond reasonable dispute that Gateway knew or should have known both of its underlying PIP responsibility to plaintiff and that, but for the error of counsel, the PIP claim would have been made against it. Indeed, we go further. In our view, as soon as Gateway was put on notice of the occurrence of an accident between its named insured and a pedestrian, it was thereby and at the time noticed of its PIP responsibility to plaintiff. Cf. N.J.S.A. 39:6A-5(a). In effect, therefore, plaintiff had become its direct insured vis-a-vis the payment of PIP benefits.
[Id. at 472, 429 A.2d 422].
We are persuaded that the operative circumstances here are not only virtually identical to those in Smelkinson, but that the equitable considerations now before us are even more compelling. First, counsel's error is more excusable here in view of the avalanche during the last decade of amendatory and supplementary legislation affecting automobile insurance and the reparation scheme. One can readily understand, in the absence of reported cases on the subject, how a practitioner might have missed the deemer statute. Moreover, unlike Smelkinson, a formal PIP demand had been timely made on the responsible party. Liberty, who must certainly be charged with either actual or constructive knowledge of its PIP obligation, declined despite that knowledge to honor the responsibilities imposed upon it by statute. Its rejection of the timely claim was indefensible. And when the economic claims were asserted against its insured in the negligence action, it surely must be chargeable with knowledge that but for its misadvice, the PIP claim would have been made directly against it.
We reject as sophistical Liberty's attempt to distinguish Smelkinson on the ground that in Smelkinson, the PIP responsibility was clearly a part of the insurer's contractual undertaking while here the policy it issued defendants would first have had to have been reformed in order to afford benefits to a New Jersey pedestrian injured in New Jersey by an out-of-state vehicle. Not so. The whole point of the deemer statute is that policies to which it applies are to be read as if the PIP responsibility were actually written in, and that responsibility is imposed on the carrier as if it were actually written in. Since the PIP obligation is thus deemed to be written in, it is already there, and reformation is therefore *590 not required. We consequently repeat what we said in Smelkinson:
We are thus satisfied that the spirit and philosophy of the No Fault Law imposed the affirmative duty upon the Gateway to deal fairly with the plaintiff. And we are further satisfied that the duty of fair dealing, whatever else it may or may not have affirmatively demanded by way of the carrier's conduct, must be deemed to prohibit the carrier's avoidance under these circumstances of its statutorily imposed liability to pay medical expenses.
[Ibid.]
Our conclusion that the trial judge was correct in permitting the amendment in order to allow plaintiffs to assert a direct PIP claim and in then bifurcating that claim moots the appeal from his order barring plaintiffs, under the collateral source rule of N.J.S.A. 2A:15-97, from seeking a recovery of medical expenses in the negligence action. Clearly, since the medical expenses are collectible under PIP and since there is now a PIP cause of action pending, those expenses may not be sought in the negligence action against the tortfeasors, N.J.S.A. 39:6A-12, but only against the carrier. Moreover, any recovery by plaintiffs in the PIP action against Liberty will be for the benefit of Medicaid, whose statutory right to reimbursement under N.J.S.A. 30:4D-7.1 protects its secondary payer status.
Despite the consequent mootness of the appeal from the order barring recovery of medical benefits under N.J.S.A. 2A:15-97, we nevertheless consider the question since we are persuaded that the statute does not apply to reimbursable benefits paid by Medicaid. N.J.S.A. 2A:15-97, enacted in 1987, provides as follows:
In any civil action brought for personal injury or death, except actions brought pursuant to the provisions of P.L. 1972, c. 70 (C. 39:6A-1 et seq.), if a plaintiff receives or is entitled to receive benefits for the injuries allegedly incurred from any other source other than a joint tortfeasor, the benefits, other than workers' compensation benefits or the proceeds from a life insurance policy, shall be disclosed to the court and the amount thereof which duplicates any benefit contained in the award shall be deducted from any award recovered by the plaintiff, less any premium paid to an insurer directly by the plaintiff or by any member of the plaintiff's family on behalf of the plaintiff for the policy period during which the benefits are payable. Any party to the action shall be permitted to introduce evidence regarding any of the matters described in this act.
The statutory purpose is clear. As we said in Kiss v. Jacob, 268 N.J. Super. 235, 246, 633 A.2d 544 (App.Div. 1993), the overriding *591 legislative intent "was to prevent a claimant from receiving benefits beyond the damages awarded under a judgment entered and to relieve defendants and insurance companies from having to compensate plaintiffs for damages in excess of the total amounts of their losses." The legislative determination, which the Legislature was free to make, was apparently not only to prevent plaintiffs from obtaining a double recovery but also, except where PIP payments are involved, to shift the burden, at least to some extent, from the liability and casualty insurance industry to health and disability third-party payers.
We think it plain, however, that neither of these purposes is advanced by application of the collateral source statute where, as here, a plaintiff could not in any case pocket a double recovery for medical expenses for the reason that his entire recovery is subject to Medicaid's reimbursement rights. Nor are the statutory purposes advanced when the ultimate burden is shifted from the tortfeasor's liability carrier to a governmentally-funded secondary payer. Such a shift, moreover, contravenes the lien and reimbursement provision of N.J.S.A. 30:4D-7.1. Because of that conflict, we must determine which of the two provisions prevails.
We agree with the analysis of Marmorino v. Housing Auth. of the City of Newark, 189 N.J. Super. 538, 461 A.2d 171 (Law Div. 1983), which considered a similar conflict between the Medicaid lien and reimbursement provisions of N.J.S.A. 30:4D-7.1 and the collateral source rule of the Tort Claims Act, N.J.S.A. 59:1-1 to 12-3, 59:9-2e. Like N.J.S.A. 2A:15-97, the Tort Claims rule requires deduction from a plaintiff's recovery of duplicative benefits received "from a policy or policies of insurance or any other source other than a joint tortfeasor...." The text of that provision, like the text of N.J.S.A. 2A:15-97, would seem on its face to encompass Medicaid benefits. In resolving the conflict in favor of Medicaid, and holding that the collateral source rule of the Tort Claims Act did not apply to Medicaid payments, the Law Division noted first that, as here, plaintiff was not "within the framework of the Legislature's objective in barring double recovery when a *592 collateral source benefit has been paid ... [since p]laintiff, if allowed a medical expense recovery, would be obligated to immediately repay Medicaid...." Id. at 541, 461 A.2d 171. Nor, the Law Division concluded, was there any legislative evidence of an intent to benefit the commercial insurance industry at the expense of Medicaid. Thus, applying the principle enunciated by Clifton v. Passaic Cty. Bd. of Taxation, 28 N.J. 411, 421, 147 A.2d 1 (1958), for judicial resolution of statutory conflicts, namely a determination of that construction which best serves the discerned overall and overriding legislative intent, the court in Marmorino concluded that the bar of the collateral source provision of the Tort Claims Act was required to yield to the lien and reimbursement provision of the Medicaid Act.
We endorse the reasoning of Marmorino and find it fully applicable to N.J.S.A. 2A:15-97 as well. We add to Marmorino only the observation that since this state's Medicaid lien and reimbursement provisions are required by federal law, principles of supremacy and preemption would also, in our view, apply. We are satisfied that a state statute could not, even if that were its intent, defeat the federal reimbursement scheme by the simple expedient of making medical expenses already paid by Medicaid deductible from a tort recovery against the tortfeasor. The analysis of Varacalli v. State Farm Mut. Auto. Ins. Co., supra, 763 F. Supp. 205, interdicting a state no-fault provision purporting to deprive Medicare of its secondary payer status, applies equally here.[5]
*593 The order allowing amendment of the complaint to assert a direct PIP claim against Liberty Mutual Insurance Company and bifurcating that claim from the negligence action is affirmed. The appeal from the order barring recovery of medical expenses in the negligence action is dismissed as moot.
NOTES
[1] Medicaid, the Medical Assistance Program established by 42 U.S.C.A. § 1396 et seq., is a federal-state participatory program for the benefit of certain classes of indigents in which New Jersey participates pursuant to N.J.S.A. 30:4D-1 to -42. It is funded equally by the federal and state governments.
[2] Insofar as we are able to determine, the only references to the deemer provision of N.J.S.A. 17:28-1.4 prior to 1992 were a footnote in Healey v. Allstate Ins. Co., 225 N.J. Super. 172, 177, 542 A.2d 4 (App.Div. 1988), and a parenthetical reference in Rutgers Cas. Ins. Co. v. State Farm Mut. Ins. Co., 234 N.J. Super. 202, 205, 560 A.2d 722 (App.Div. 1989). Neither opinion dealt directly with the statute or its import.
[3] Liberty concedes that since the accident predated the 1990 amendment of N.J.S.A. 39:6-73.1 and 39:6A-4(a), which placed a $250,000 limit on mandatory medical expenses, the entire cost of the child's care will be borne under no-fault. We further note that although N.J.S.A. 39:6-73.1, even as originally enacted by L. 1977, c. 310, provides that the no-fault carrier pays only the first $75,000 of PIP benefits and that the excess is paid by the Unsatisfied Claim and Judgment Fund, the fact of the matter is that the excess is actually paid by an insurance industry pool. See State Farm Mut. Auto. Ins. Co. v. Unsatisfied Claim and Judgment Fund, 192 N.J. Super. 26, 29, 469 A.2d 55 (App.Div. 1983).
[4] The provision of N.J.S.A. 39:6A-6 respecting benefits collected by military personnel was added by amendment in 1981, apparently responsive to Lapidula v. Government Emp. Ins. Co., 146 N.J. Super. 463, 370 A.2d 50 (App.Div. 1977), which held that in the absence of a specific statutory provision respecting those benefits, PIP benefits were primary without set-off.
[5] We note that because of the complexity of the separate and competing statutory frameworks implicated by N.J.S.A. 2A:15-97, it might reasonably have been anticipated that statutory conflicts would arise requiring judicial resolution. Thus we have recently had to face a conflict between that statute and the collateral source rule of the Tort Claims Act, N.J.S.A. 59:9-2e, in respect of workers' compensation benefits. Furey v. County of Ocean, 273 N.J. Super. 300, 641 A.2d 1091 (App.Div. 1994). Based on the overall and overriding legislative intent, we decided that in that instance 2A:15-97 was required to yield to N.J.S.A. 59:9-2e. We find nothing inconsistent between the holding in Furey and the Marmorino conclusion that in the circumstances there, it was N.J.S.A. 59:9-2c that was required to yield. The point, of course, is that whenever there is statutory conflict, the overriding legislative intent must be determined on a case by case basis.