Cecelia TARANSKY, Plaintiff,

v.

Kathleen SEBELIUS, et. al., Defendants.

Civil Action No. 12–4437.

United States District Court, D. New Jersey.

June 12, 2013.

**564**

Franklin P. Solomon, Solomon Law Firm, LLC, Alan Herschel Sklarsky, Williams Cuker Berezofsky, Cherry Hill, NJ, for Plaintiff.

Daniel Shay Kirschbaum, Office of the U.S. Attorney, Newark, NJ, for Defendants.

### Memorandum Opinion & Order

JOSEPH H. RODRIGUEZ, District Judge.

This matter is before the Court on the motion of Defendants Kathleen Sebelius in her capacity as Secretary of the United States Department of Health and Human Services, the United States Department of Health and Human Services, and the United States of America to dismiss Plaintiff Cecelia A. Taransky's putative class action Complaint for lack of jurisdiction, failure to state a claim, or in the alternative for summary judgment [Dkt. 9]. For the reasons described herein, the Court will grant Defendants' motion.

### Background

This matter concerns Ms. Taransky's obligation to reimburse the federal Medicare program for its payments of her medical expenses related to injuries that she sustained during a trip-and-fall accident. The Medicare program is a federal program of health benefits for elderly and disabled individuals. *See* 42 U.S.C. § 1395 *et seq.* When it was first enacted, the Medicare program acted as the "primary payer" for covered medical items and services, regardless of whether the beneficiary was also covered by another health plan. *See Fanning v. United States*, 346 F.3d 386, 388 (3d Cir.2003) (citing Social Security Amendments of 1965, Pub.L. No. 89–97, § 1862(b), 79 Stat. 286). However, beginning in the 1980s, Congress enacted a series of cost-cutting amendments to the Medicare program, which are collectively known as the Medicare as Secondary Payer ("MSP") statute. *Id.* The MSP requires beneficiaries to "exhaust all available insurance coverage" before turning to Medicare's coverage. *Id.* Accordingly, under the MSP, these other sources of coverage are considered "primary" and Medicare acts as the "secondary" payer responsible for those amounts not covered by the "primary" payer.[1] *Id.*

---

1. In this context, in which Medicare acts as the secondary payer, a "primary payer" is "any entity that is or was required or responsible to make payment with respect to an item or service (or any portion thereof) under a primary plan," including, "but are not limited to, insurers or self-insurers, third party administrators, and all employers that sponsor or contribute to group health plans or large group health plans." 42 C.F.R. § 411.21. A "primary plan" in this context means "a group health plan or large group health plan, a workers' compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan), or no-fault insurance." *Id.*

The MSP prohibits Medicare from making payments where payment has already been made or where a primary payer could be reasonably expected make the payment. 42 U.S.C. § 1395y(b)(2)(A)(i). Additionally, in the event that a primary plan has not made or cannot reasonably be expected to promptly make payment with respect to the covered item or service, the MSP allows Medicare to make these payments, which are "conditioned on reimbursement to the appropriate Trust Fund." 42 U.S.C. § 1395y(b)(2)(B)(i). The MSP further provides that such reimbursement is required "if it is demonstrated that such primary plan has or had a responsibility to make payment," which "may be demonstrated by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means." 42 U.S.C. § 1395y(b)(2)(B)(ii). Further, the MSP provides that in the event that reimbursement is not paid, the United States may bring an action against those entities "required or responsible (directly, as an insurer or self-insurer, as a third-party administrator, as an employer that sponsors or contributes to a group health plan, or large group health plan, or otherwise) to make payment with respect to the same item or service (or any portion thereof) under a primary plan." 42 U.S.C. § 1395y(b)(2)(B)(ii).

This case arises out of a trip-and-fall accident that occurred on November 7, 2005, in which Ms. Taransky was injured at the Larchmont Commons Shopping Center in Mount Laurel, New Jersey. (Compl.) The federal Medicare program paid $18,401.41 in conditional payments for Ms. Taransky's medical care related to her injuries sustained in this accident. (AR 196)[2] Ms. Taransky sued the owners and operators of the shopping center on October 26, 2007, seeking damages for her personal injury losses. (Compl.) On October 26, 2009, Ms. Taransky settled the claims against these tort defendants in return for a lump-sum payment of $90,000.00. (AR 222–23).

Following the settlement, Plaintiff's counsel filed a "Motion to Adjudicate Allocation of Settlement Proceeds" in the Superior Court of New Jersey, Law Division, Burlington County, that included a proposed order stating that "no portion of this recovery obtained by plaintiff in this matter is attributable to medical expenses or other benefits compensated by way of a collateral source." (AR 209–210) In addition, to this proposed order, Plaintiff's counsel filed a "certification," in which he states that "New Jersey law does not permit a plaintiff's tort recovery of losses (such as medical expenses) that have been compensated by way of collateral sources of benefits, such losses were not considered in settlement negotiations between the parties to this action and are not part of any recovery that may be obtained."[3]

**2.** Citations to the Administrative Record are noted as "AR XXX."

**3.** To support this statement, Plaintiff's counsel cited the New Jersey Collateral Source Statute "NJCSS ("NJCSS"), N.J.S.A. 2A:15–97, which provides:

> In any civil action brought for personal injury or death, except actions brought pursuant to the provisions of P.L.1972, c. 70

(C. 39:6A–1 et seq.), if a plaintiff receives or is entitled to receive benefits for the injuries allegedly incurred from any other source other than a joint tortfeasor, the benefits, other than workers' compensation benefits or the proceeds from a life insurance policy, shall be disclosed to the court and the amount thereof which duplicates any benefit contained in the award shall be deducted from any award recovered by the plaintiff,

(AR 217–20) The state court entered the unopposed proposed order on November 20, 2009. (AR 211–212).

On December 8, 2009, the Medicare Secondary Payer Recovery Contractor, on behalf of the Centers for Medicare and Medicaid Services ("CMS"), sent Ms. Taransky a letter request that she reimburse Medicare $10,121.15.[4] (AR 195–199) Ms. Taransky then proceeded through the Medicare administrative process, challenging her obligation to reimburse Medicare. (Compl.) On January 4, 2010, Ms. Taransky sought redetermination from the Medicare Secondary Payer Recovery Contractor, which was denied by way of letter dated March 30, 2010. (AR 185–193) Ms. Taransky again sought redetermination of Medicare's reimbursement decision, which a "Qualified Independent Contractor" affirmed via letter dated October 15, 2010. (AR 143–48, 125–130) Ms. Taransky then proceeded before an Administrative Law Judge ("ALT") by way of telephonic hearing on March 9, 2011. (AR 029).

Ms. Taransky made the following arguments before the ALJ: (1) that under the Medicare Secondary Payer Manual, Chapter 7, § 50.4.4, "the only situation in which Medicare recognizes allocations of liability payments to nonmedical losses is when payment is based on a court order on the merits of the case" and that Medicare must defer to the state court's allocation order because through its order, "the state court issued a decision on the merits of the case in which it allocated no part of the settlement to medical expenses or other benefits by way of a collateral source"; (2) that the New Jersey Collateral Source Statute ("NJCSS") "prohibits a plaintiff's tort recovery from including any insured loss, apart from worker's compensation and life insurance benefits" and as such the Medicare payments were a collateral source and a New Jersey court would be legally prohibited from including them in any verdict; (3) that Medicare is obligated to abide by the state court's order; and (4) that "reimbursement would be inequitable and that it would be unfair for Medicare to be 'made whole' for its expenditures from the already inadequate compensation received by the Beneficiary." (AR 037–039).

The ALJ analyzed and rejected these arguments in its opinion issued April 15, 2011, finding that the state court's order was not "on the merits" of the case, as it was issued pursuant to a stipulation of the parties and Medicare is therefore not required to defer to the state court's order. (AR 037–039) Further, the ALJ determined that the NJCSS does not apply to conditional Medicare benefits and this statute does not affect the Beneficiary's legal obligation to reimburse Medicare. (AR 038) Moreover, the ALJ noted that Ms. Taransky did not adduce evidentiary support for her "unfairness" claim and also points to evidence in the record that Ms.

---

less any premium paid to an insurer directly by the plaintiff or by any member of the plaintiff's family on behalf of the plaintiff for the policy period during which the benefits are payable. Any party to the action shall be permitted to introduce evidence regarding any of the matters described in this act.

N.J.S.A. § 2A:15–97. The Superior Court of New Jersey has noted that in enacting the NJCSS, the "overriding legislative intent was to prevent a claimant from receiving benefits beyond the damages awarded under a judgment entered and to relieve defendants and insurance companies from having to compensate plaintiffs for damages in excess of the total amounts of their losses." *Lusby By & Through Nichols v. Hitchner,* 273 N.J.Super. 578, 642 A.2d 1055, 1061 (N.J.App.Div.1994) (internal quotation omitted).

4. This figure reflects a reduction from the $18, 401.41 paid by Medicare based on Ms. Taransky's costs in procuring this settlement. (AR 195–199).

Taransky's counsel sought confirmation from Medicare as to the amount of the conditional payments for counsel's use in settlement negotiations. (AR 039) Thus, the ALJ rejected Ms. Taransky's arguments and determined that she is liable for repayment of Medicare's conditional payments as described in the March 30, 2010 redetermination letter. (AR 039).

Ms. Taransky appealed the ALJ's determination to the Medicare Appeals Council ("MAC"), who rendered a decision on May 11, 2010, finding "no error in the ALJ's well-reasoned decision." (AR 012) Accordingly, the MAC adopted the ALJ's decision "in its entirety" and added a discussion of a then-recently decided case, as will be discussed below, that comported with the ALJ's conclusions. (AR 012) (citing *Mason v. Sebelius*, No. 11–2370, 2012 WL 1019131 (D.N.J. Mar. 23, 2012) (Simandle, J.)) In addition, the MAC explicitly made a factual finding that "the $90,000 settlement in this case and the accompanying release of all claims against the defendants included compensation for medical expenses already paid for by Medicare with conditional payments." (AR 012).

On July 16, 2012, Ms. Taransky filed the instant lawsuit, through which she asserts claims for "declaratory judgment and injunctive relief," "violation of due process rights under the Fifth and Fourteenth Amendments to the Constitution," and "for unjust enrichment." (Compl.) In essence, Ms. Taransky asks the Court to review the MAC's decision that in obtaining a tort settlement in a trip-and-fall accident, and notwithstanding a state trial court's order allocating this tort settlement recovery to non-medical expenses, Ms. Taransky received payment from a "primary plan" responsible for payment of her medical expenses that had been covered by Medicare, thereby requiring Ms. Taransky to reimburse Medicare $10,121.15 pursuant to the MSP, 42 U.S.C. § 1395y(b)(2)(B)(ii). Ms. Taransky also seeks relief on behalf of a "class of all other persons similarly situated who had obtained tort recoveries subject to New Jersey law and were subjected to improper claims for reimbursement of Medicare out of their personal injury recoveries." (Compl. ¶ 9) On November 7, 2012, Defendants moved the Court to dismiss Ms. Taransky's Complaint, or, in the alternative, enter an order of summary judgment in favor of Defendants. [Dkt. 9] The Court heard oral argument in this matter on May 13, 2013. For the reasons described herein, the Court will grant Defendants' motion.

### *Analysis*

### 1. Dismissal Under 12(b)(1)

■ In bringing their motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), Defendants assert a factual challenge to the Court's subject matter jurisdiction over Ms. Taransky's claim "for violation of due process rights under the Fifth and Fourteenth Amendments to the Constitution." [5] (Defs.' Br. Summ. J. 17–20) Here, Ms. Taransky's Complaint asserts that 28 U.S.C. § 1331 provides the Court's jurisdiction over her claim that she "has been deprived of a property interest in violation of the due process requirements of the Fifth and Fourteenth Amendments to the Constitution of the United States" when Medicare demanded repayment and deprived her of a property interest in her tort recovery. (Compl. ¶¶ 5, 48–

---

5. Here, the motion challenges the Court's jurisdiction in fact; accordingly, "[b]ecause at issue in a factual 12(b)(1) motion is the trial court's jurisdiction its very power to hear the case there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

59). However, Defendants contend that 28 U.S.C. § 1331 does not confer jurisdiction over these claims that arise under the Medicare Act, and because Ms. Taransky has failed to pursue these claims through the Medicare administrative process, the Court does not have subject matter jurisdiction.

■ The Court notes that 28 U.S.C. § 1331 does not provide a jurisdictional basis for claims arising under the Medicare Act, as "[t]he third sentence of 42 U.S.C. § 405(h), made applicable to the Medicare Act by 42 U.S.C. § 1395ii, provides that § 405(g), to the exclusion of 28 U.S.C. § 1331, is the sole avenue for judicial review for all "claim[s] arising under" the Medicare Act."[6] *Heckler v. Ringer,* 466 U.S. 602, 614–15, 104 S.Ct. 2013, 2021, 80 L.Ed.2d 622 (1984) (internal citation omitted). Claims "arise under" the Medicare Act when the Act provides "both the substance and standing for the claims." *Fanning v. United States,* 346 F.3d 386, 396 (3d Cir.2003) (citing *Heckler,* 466 U.S. at 615, 104 S.Ct. 2013). Accordingly, in general, 42 U.S.C. § 405(g) provides the court with jurisdiction over claims arising under the Medicare Act, which are appropriately before the court only after having been fully exhausted during the adminis-

trative process as required under Section 405(g). *See, e.g. Weinberger v. Salfi,* 422 U.S. 749, 763–67, 95 S.Ct. 2457, 2465–68, 45 L.Ed.2d 522 (1975) (discussing administrative exhaustion requirement).

Plaintiff argues that her due process claims are properly before the Court because the basis for her constitutional claims "is not the adverse CMS administrative decision nor even the availability of the CMS administrative process *per se,*" but that "CMS administrative procedures fail to address the issue of its systemic disregard for the limits of statutory authority" and renders "those administrative procedures fundamentally flawed." (Pl.'s Br. Opp'n. 30–32) (emphasis in original) Here, in contrast, Defendants direct the Court to *Mason v. Sebelius,* No. 11–2370, 2012 WL 1019131 (D.N.J. Mar. 23, 2012) (Simandle, J.), and contend that, like the claims in that case, Ms. Taransky's due process claims "arise under" the Medicare Act because the Medicare Act provides both the substance and standing for Ms. Taransky's claims. (Defs.' Reply 4) In *Mason,* Judge Simandle reviewed a nearly identical claim and arguments advanced in opposition to the Defendants' motion to dismiss.[7] There, Judge Simandle reasoned

---

6. Section 405(h) of Title 42 provides, in relevant part, that "[n]o action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter." 42 U.S.C.A. § 405(h). This rule is subject to a very limited exception, under which a court may exercise jurisdiction under 28 U.S.C. § 1331 for claims that simply cannot be channeled through the administrative process, and in which no judicial review is available at all. *See Fanning v. United States,* 346 F.3d 386, 399–400 (3d Cir.2003) (noting that "channeling would not be required if [the plaintiffs] could show that they have no way of having their claims reviewed" but that there, that the district court "had no federal question jurisdiction" over the plain-

tiff's "amended class action complaint seeking to enjoin the government's attempt to obtain reimbursement of Medicare overpayments" because those claims arise under the Medicare Act); *Bowen v. Michigan Acad. of Family Physicians,* 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986) (creating the limited 28 U.S.C. § 1331 exception).

7. Plaintiff's counsel, having entered an appearance in *Mason,* should be very familiar with the facts and arguments advanced in *Mason* and the similarities between *Mason* and the case presently before the Court. In *Mason,* the underlying case stemmed from a slip-and-fall action against Defendant Showboat Hotel and Casino in Atlantic City, New Jersey. No. 11–2370, 2012 WL 1019131 (D.N.J. March 23, 2012). The Complaints in

that "[t]he essence of Plaintiff's due process claim is that, under the Medicare Act and applicable regulations and policy statements, the government is not entitled to recover conditional Medicare payments from a beneficiary who has recovered a lump sum tort settlement in New Jersey" and therefore, Plaintiff's claim is "wholly dependent upon determining whether or not CMS has correctly interpreted the MSP; it is thus apparent that both the standing and the substantive basis for the claim ... are rooted in, and derived from, the Medicare Act." *Mason*, 2012 WL 1019131 at *5, n. 3 (quoting *Fanning v. United States*, 346 F.3d 386, 400 (3d Cir. 2003) (internal quotation omitted)). Accordingly, Judge Simandle concluded that the claim was "one 'arising under' the Medicare act and the third sentence of § 405(h) therefore deprives the Court of federal question jurisdiction." *Id.*

The Court agrees with Judge Simandle's reasoning that this "due process" claim arises under the Medicare Act. *Id.* Further, Ms. Taransky had ample opportunity to channel her constitutional claim throughout the administrative process, and Ms. Taransky has not shown otherwise. *See, e.g. Fanning v. United States*, 346 F.3d 386, 400 (3d Cir.2003) ("That is to say, channeling would not be required if [the plaintiffs] could show that they have no way of having their claims reviewed."). Accordingly, the Court will grant Defendants' motion to dismiss Ms. Taransky's due process claim.

### 2. Medicare Reimbursement Claims

Defendants next seek dismissal or an entry of summary judgment on Plaintiff's fully-exhausted claims, "Declaratory Judgment and Injunctive Relief" and "Unjust Enrichment," through which Plaintiff challenges the Medicare Appeals Council's decision to uphold Medicare's reimbursement claim. (Defs.' Br. 20–45) Specifically, Ms. Taransky seeks from the Court a "reversal of the MAC decision; a judgment relieving her of liability to reimburse the Medicare program to that portion of her tort recovery representing the primary plan's demonstrated responsibility for medical expenses covered by the program; and a refund of all monies improperly paid to defendants in respect of the Medicare reimbursement claim." (Compl. ¶ 8) Ms. Taransky also seeks relief on behalf of a "class of all other persons similarly situated who had obtained tort recoveries subject to New Jersey law and were subjected to improper claims for reimbursement of Medicare out of their personal injury recoveries." (Compl. ¶ 9).

### a. Jurisdiction and Standard

As discussed above, 42 U.S.C. § 405(g) provides the basis for the Court's jurisdiction over Plaintiff's claims that challenge the MAC's decision.[8] Section 405(g) applies to the Medicare Act through 42 U.S.C. § 1395ff(b)(1)(A) and provides that the United States District Court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the deci-

---

both cases, the claims asserted therein, and the arguments advanced in opposition to Defendants' motion are nearly identical and their relevant differences are discussed below.

**8.** Plaintiff recognizes that Section 405(g) provides the basis for the Court's jurisdiction over these claims, as she pleads that jurisdiction "is proper pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1395ff(b)" because she "ex-

hausted her administrative remedies through the United States Department of Health and Human Services with respect to her claims, having received an adverse Decision of the Medicare Appeals Council, and [having satisfied] the amount in controversy exceeds the $1,350 statutory minimum for judicial review." (Compl. ¶ 4).

**570**

sion of the [Secretary], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).[9]

Section 405(g) also provides that as part of the Court's review, "[t]he findings of the [Secretary] as to any fact, if supported by substantial evidence, shall be conclusive." *Id.* Accordingly, the Court's role in conducting its review "is to determine whether there is substantial evidence in the administrative record to support the Secretary's final decision." *Papciak v. Sebelius,* 742 F.Supp.2d 765, 768 (W.D.Pa. 2010) (citing 42 U.S.C. § 405(g)). Here, "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (citing *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). The Court must also ensure that the Secretary applied the proper legal standards when evaluating the Medicare benefits claim.

*See, e.g. Friedberg v. Schweiker,* 721 F.2d 445, 447 (3d Cir.1983) (noting that "the issue before this court is whether the Secretary, in making his findings, applied the correct legal standards to the facts presented"); *Beckett v. Leavitt,* 555 F.Supp.2d 521, 526 (E.D.Pa.2008) (internal citation omitted) (noting that "apart from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standards in evaluating a claim of entitlement to Medicare benefits"). However, ultimately, "the beneficiary bears the burden of proving his or her entitlement to Medicare coverage." *Id.* (internal citation omitted).[10]

**b. Analysis**

 Through the instant action, Ms. Taransky seems to primarily challenge the legal basis for the MAC's conclusions that Medicare properly demanded reimbursement and, as such, that Ms. Taransky is responsible for repayment of the conditional Medicare payments.[11] (AR 015–16) In

9. Title 42 U.S.C. § 1395ff(b)(i)(A) provides:
Subject to subparagraph (D), any individual dissatisfied with any initial determination under subsection (a)(1) of this section shall be entitled to reconsideration of the determination, and, subject to subparagraphs (D) and (E), a hearing thereon by the Secretary to the same extent as is provided in section 405(b) of this title and, subject to paragraph (2), to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title. For purposes of the preceding sentence, any reference to the "Commissioner of Social Security" or the "Social Security Administration" in subsection (g) or (*l*) of section 405 of this title shall be considered a reference to the "Secretary" or the "Department of Health and Human Services", respectively.

10. The Court will therefore treat Defendants' motion as a motion for summary judgment pursuant to Fed.R.Civ.P. 56 when confronting the factual and legal conclusions presented by the administrative record. *See, e.g. Hummel v. Heckler,* 736 F.2d 91, 93 (3d Cir.1984)

("Because the district courts have no factfinding role in [Section 405(g)] Social Security cases, those cases are ordinarily disposed of on cross-motions for summary judgment made presumably under Fed.R.Civ.P. 56(a), (b)."). Under Fed.R.Civ.P. 56, the Court will grant a motion for summary judgment where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).

11. Specifically, Ms. Taransky disputes the MAC's decision for the following reasons: (1) the plain language of the MSP statute limits the scope of medical reimbursement claims and requires "a demonstration that a primary plan has or had responsibility with respect to the Medicare-covered item or service" and, under the MSP, this responsibility can be demonstrated "by a judgment"; (2) tort defendants and their insurers are not "primary plans" because they do not have a "specific and preexisting obligation to pay for the Medicare-covered expenses at issue"; (3) the state trial court's allocation order is a "judgment" demonstrating that Ms. Taransky does

contrast, Defendants assert that they are entitled to an entry of summary judgment upholding the MAC's decision and they again point to Judge Simandle's opinion in *Mason v. Sebelius*, No. 11–2370, 2012 WL 1019131 (D.N.J. March 23, 2012), which, as previously discussed, confronted many of the issues raised in this case. In *Mason*, Judge Simandle engaged in a thorough review of the MSP, the NJCSS, and New Jersey case law and ultimately found, in relevant part, that the New Jersey Supreme Court would likely conclude that conditional Medicare benefits subject to reimbursement are not a collateral source under the NJCSS and the NJCSS therefore does not apply to exclude conditional Medicare benefits from a tort settlement or judgment. *Mason v. Sebelius*, No. 11–2370, 2012 WL 1019131 (D.N.J. March 23, 2012) Additionally, Judge Simandle reasoned that the MSP authorizes this type of reimbursement action, whereby Medicare seeks reimbursement of funds from a settlement with an alleged New Jersey tortfeasor, because the tortfeasor or its liability insurer could be held as a "primary plan" under the MSP; thus, the settlement that the tortfeasor paid to the plaintiff could be a source of reimbursement under the MSP.[12] *Id.*

Defendants point out that this case is nearly identical to *Mason*, except for two "slight tweaks": first, unlike *Mason*, the state court here entered an order allocating the tort settlement, which Ms. Taransky asserts is a "judgment" entitled to deference pursuant to Chapter 7, § 50.4.4 of the Medicare as Secondary Payer Manual, and second, Ms. Taransky raises a "proportionality argument" through which she asserts that Medicare's recovery should be limited to "a proportionate share of the recovery."[13] (Defs.' Br. Summ. J. 2–3).

Here, the Court notes again that, as detailed earlier, 42 U.S.C. § 405(g) provides the Court with jurisdiction over this case and outlines the Court's role in reviewing this matter. Under Section 405(g), the Court's role is to accept as conclusive all findings of fact that are supported by substantial evidence and also ensure that the MAC applied the proper

not have a responsibility to reimburse Medicare, as the order indicates that no portion of the recovery was in respect of medical expenses paid for by a collateral source of benefits, and (4) Medicare is a "collateral source" of benefits under the NJCSS. (Pl.'s Br. Opp'n. 4–18).

**12.** Judge Simandle noted that the December 2003 amendments to the MSP "explicitly broadened the definition of 'primary plan' to include tortfeasors responsible for the beneficiary/tort plaintiff's medical expenses paid by Medicare" and as such, he held that the tortfeasor "or its liability insurer, could be held as a primary plan under the MSP, and the settlement it paid to Plaintiff can be a source of reimbursement under the MSP." *Mason v. Sebelius*, No. 11–2370, 2012 WL 1019131, at *13–14 (D.N.J. March 23, 2012).

**13.** Ms. Taransky argues for the first time before this Court that, under *Arkansas Dep't of Health & Human Servs. v. Ahlborn*, 547 U.S.

268, 126 S.Ct. 1752, 164 L.Ed.2d 459 (2006), Defendants' entitlement to reimbursement should be "limited to the amount actually recovered by a beneficiary in respect of medical expense, or, where no such allocation is made, a proportionate share of the recovery." (Pl.'s Br. Opp'n. 18; Compl. ¶¶ 60–67) Defendants contend that this argument is not properly before the Court because Plaintiffs failed to administratively exhaust this claim. The Court agrees. The Court's review of the administrative record reveals that Plaintiff did not raise her *Ahlborn*/proportionality claim during the administrative process, yet, for the first time at this stage, asks this Court to limit Defendants' entitlement to Medicare reimbursement. Because Plaintiff has not administratively exhausted this claim as required under Section 405(g), this claim is not properly before the Court and the Court therefore lacks jurisdiction to consider it.

legal standards when reviewing Ms. Taransky's claims. Thus, at this juncture, the Court notes the MAC's factual finding that "the $90,000 settlement in this case and the accompanying release of all claims against the defendants included compensation for medical expenses already paid for by Medicare with conditional payments." (AR 012) This finding is supported by substantial evidence in the administrative record.

First, the MAC considered several letters from Ms. Taransky's counsel to the Medicare Secondary Payer Recovery Contractor, demonstrating that Ms. Taransky sought and received information about the conditional Medicare payments for use "as a basis for any potential settlement.'" (AR 013, 245, 246, 258, 260) Here, when negotiating the settlement, Plaintiff's counsel sent at least four letters asking about the amount of the "Medicare lien" and that he "cannot negotiate the case unless [counsel knows] the full amount of Medicare's claim." (AR 013, 245, 246, 258, 260) Second, the MAC looked at "the settlement itself," which "includes claims for expenses for medical treatment as one of the claims being released for the payment of $90,000, and contains an express provision for the appellant to satisfy and discharge any Medicare liens from the settlement proceeds." (AR 013, 222) Finally, the MAC looked at the certification of plaintiff's counsel filed in support of the allocation motion, which states "that the lawsuit included claims 'for certain expenses for medical treatment.'" (AR 013, 218) This is "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion" that the settlement included compensation for medical expenses already conditionally paid for by Medicare.

See *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (internal citation omitted) (describing "substantial" evidence). Accordingly, the Court therefore accepts this finding as "conclusive" under Section 405(g).

The Court further finds that the MAC applied the proper legal standards to Ms. Taransky's case. At this juncture, the Court agrees with Judge Simandle's reasoning in *Mason* and the legal interpretations that underpin the decision in that case.[14] The MAC properly applied the legal standards discussed in *Mason* when it concluded that "there is no doubt in this case that a plaintiff's tort recovery from a self-insured defendant, or a defendant with a liability insurance policy, is subject [to] a claim by Medicare for reimbursement of conditional payments." (AR 014) Accordingly, the Court now turns to an assessment of the MAC's determination regarding the legal significance of the state court's allocation order.

The Court finds that the MAC and ALJ properly addressed the issue of the state allocation order. The MAC adopted the ALJ's decision in its entirety, including the ALJ's conclusions with regard to the state court's allocation order. (AR 012) In rendering its decision, the ALJ addressed Ms. Taransky's attempt to apply the Medicare Secondary Payer Manual, Chapter 7, § 50.4.4 to her case, as she does again in arguing the instant case before the Court. (*See* Compl. ¶¶ 26–30, 42–47; Pl.'s Br. Opp'n. 7–11) This section provides, in relevant part, that "[t]he only situation in which Medicare recognizes allocations of liability payments to nonmedical losses is when payment is based on a court order on the merits of the case." Ms. Taransky asserted, as she does here, that "through

---

14. Judge Simandle engaged in an extensive review of the MSP, the NJCSS, and relevant case law, which the Court sees no reason to duplicate or deviate from in the instant matter, particularly in light of the nearly identical nature of the two cases.

an Order to Adjudicate the Allocation of Settlement Proceeds, the state court issued a decision on the merits of the case in which it allocated no part of the settlement to medical expenses or other benefits compensated by the way of a collateral source" and Medicare must therefore recognize this allocation. (AR 037).

However, the ALJ, citing Black's Law Dictionary, properly rejected this argument, reasoning that, " 'on the merits' means a court order 'delivered after a court has heard and evaluated the evidence and the parties' substantive arguments.' " (AR 037) (citing Black's Law Dictionary 1190 (3d ed.1969)). The ALJ determined that the state court's order "was not made pursuant to a determination by a court of any substantive issue with respect to a primary negligence suit, including determinations regarding fault or damages" and "[i]nstead, the Order was issued pursuant to a stipulation of the parties" and "the Beneficiary cannot cancel out her legal duties through a stipulation with a third party." (AR 010; 037) Here, the Court finds that the ALJ properly reached its conclusion that the state court's order, entered upon a stipulation of the parties, did not constitute a "court order on the merits of the case" as contemplated under Chapter 7, § 50.4.4 of the Medicare Secondary Payer Manual. Accordingly, this conclusion, coupled with the MAC's factual determination that the settlement included compensation for medical expenses already paid for by Medicare with conditional payments, which this Court must regard as "conclusive" under Section 405(g), leads the Court to affirm the MAC's decision.

### Conclusion

For the reasons described above, the Court concludes that it lacks subject matter jurisdiction over Ms. Taransky's "due process" and "proportionality" claims, as Ms. Taransky failed to administratively exhaust these claims. Additionally, the Court concludes that there is substantial evidence in the record supporting the MAC's properly-reasoned conclusion that in obtaining a tort settlement in a trip-and-fall accident, and notwithstanding a state trial court's order allocating this tort settlement recovery to non-medical expenses, Ms. Taransky received payment from a "primary plan" responsible for payment of her medical expenses that had been covered by Medicare. As a result, Ms. Taransky is required to reimburse Medicare $10,121.15 pursuant to the MSP. Thus,

IT IS on this 12th Day of June, 2013, hereby ORDERED that Defendant's Motion is GRANTED.